Homer KITTS, Appellant,

v.

Jim KITTS, Administrator, etc., et al.,
Appellees.

Court of Appeals of Kentucky.

Jan. 24, 1958.

Rehearing Denied Sept. 19, 1958.

Walter D. Vest, Walton, Pat Rankin, Stanford, for appellant.

Cabell Francis, Stanford, Henry Cox, Delbert Eagle, Lancaster, for appellees.

CULLEN, Commissioner.

A few months before his death Henry Kitts, age 80, transferred to his son Homer Kitts three investment certificates of a federal savings and loan association, valued at $10,000. After Henry's death action was brought by his son Jim, as administrator of the estate, to set aside the transfer on the ground of undue influence. The case was submitted to a jury, which found for the plaintiff. Judgment was entered upon the verdict, setting aside the transfer. Homer has appealed from the judgment.

The main contention of the appellant is that the evidence for the plaintiff showed only an opportunity for the exercise of undue influence; there was a complete failure of proof of actual undue influence; and therefore a verdict should have been

directed for the defendant. We will review the plaintiff's evidence briefly.

Henry had eight adult children; five daughters and three sons. Prior to October 19, 1954, when his wife died, he was living in his own home in Lincoln County, Kentucky. After his wife's death, his son Ben moved in with him to take care of him, and this situation continued until late in December, 1954, after which time Henry was taken to Homer's residence in Kenton County.

During the period from the death of Henry's wife until December 11, 1954, Homer made two visits to his father. The second visit was on December 10. On the night of that day, Homer engaged for several hours in secret conversation with his father. The next morning the two went to the savings and loan association office, and the certificates were transferred to Homer. The certificates had been in the name of Henry "or" his wife.

There was no consideration for the transfer of the certificates to Homer.

The other children were not informed that the transfer had been made, until after Henry's death.

Aside from the certificates, Henry had owned only a small farm and some "knob" land.

From this evidence, a number of factors appear which create a strong inference of unfairness and improper influence. They are (1) the advanced age of the father; (2) the preferment of one child to the exclusion of the others, creating an inequitable and disproportionate division of the estate; (3) the complete lack of consideration; (4) the concealment of the transaction from the other children; and (5) the secret conversation between Homer and his father, followed the very next day by a joint trip to the savings and loan office.

■ We think the cumulative effect of these factors was to establish a prima facie case of undue influence, sufficient to shift to the defendant the burden of going forward with the evidence, and sufficient to warrant submission of the case to the jury when Homer failed completely to offer any explanation or justification for the transfer. See Nagle v. Wakefield's Adm'r, Ky., 263 S.W.2d 127; Hutcherson v. Hutcherson's Ex'x, 313 Ky. 575, 232 S.W.2d 995; Thompson v. Henson, 307 Ky. 61, 209 S.W.2d 849; Thompson v. Thompson, 209 Ky. 677, 273 S.W. 522; Lockhart v. Justice, 203 Ky. 675, 262 S.W. 1101; Shields v. Burge, 171 Ky. 149, 188 S.W. 321.

■ The appellant next contends that the court should have instructed the jury that proof of undue influence must amount to more than mere proof of opportunity to exercise undue influence. Appellant misconstrues the respective functions of the court and the jury in this regard. The question of whether the proof goes beyond mere proof of opportunity is for the court; if it does not, it is the duty of the court to direct a verdict for the defendant; if it does, then it is for the jury to weigh the evidence and determine the issue of actual undue influence.

■ It is suggested that the court should have asked only for an advisory verdict, on the theory that the issue of undue influence is an equitable one. However, the practice in Kentucky always has been to treat issues of undue influence and lack of mental capacity as jury issues.

■ A further contention is that the jury did not properly perform its duties because it returned a verdict after a deliberation of four minutes. The short period of deliberation shows only that the members of the jury felt that the evidence was overwhelming in favor of the plaintiff, and the contention has no merit. See Beach v. Commonwealth, Ky., 246 S.W.2d 587.

The judgment is affirmed.